# Exhibit

# 1

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EDUARDO REYES-TRUJILLO, GERARDO SANTIAGO-HERNANDEZ, MIGUEL ANGEL MARTINEZ-BARRAGAN, SANTOS BRUNO-CRUZ, PABLO MATEO-VELAZQUEZ, and ANDRES PONCIANO- SERNA, | § § § § § § | |
| | § | Civil Action |
| Plaintiffs, | § | No: 2:20-CV-11692 |
| | § | |
| v. | § | |
| | § | |
| FOUR STAR GREENHOUSE, INC., a corporation, and THOMAS SMITH, an individual, | | |
| Defendants. | | |

## PLAINTIFFS' ORIGINAL COMPLAINT
### PRELIMINARY STATEMENT

1. Plaintiffs are migrant workers who left their homes and families in Mexico in 2017 and 2018 to work in the United States. They came to the U.S. on H-2A agricultural visas sponsored by the recruiting agent of Four Star Greenhouse, Inc. ("Four Star") and Thomas Smith (collectively "Defendants"), to work a variety of agricultural jobs, including for the Defendants. Plaintiffs incurred significant debts to come to the United States based on the promise of well-paid, lawful work.

2. Rather than hiring workers directly for its business, Defendants chose to rely upon a farm labor contractor, Vasquez Citrus & Hauling, Inc. ("VCH" or "Defendants' recruiting agent"), to recruit workers in Mexico and to transport those workers to Four Star's Monroe County operation. In hiring VCH, a known violator of H-2A program rules, Defendants purported to evade liability and disclaim responsibility for egregious violations of their workers' rights. Yet

-1-

as a matter of law and fact, Defendants employed the workers, standing idly by while their employees suffered wage theft, retaliation, and forced labor, all while lining their pockets with the profits from Plaintiffs' unpaid work. As Plaintiffs' employers and as principals responsible for the conduct of their recruiting agent, Defendants are liable for these violations.

3.   Instead of providing the good pay promised to the Plaintiffs, Defendants' recruiting agent repeatedly lied to and deceived Plaintiffs, falsely promising visa extensions while compelling Plaintiffs to work jobs at Four Star's growing operation in Monroe County that were not authorized under their visas. While Plaintiffs were employed by and at Four Star, they were forced to work hundreds of hours of work without pay. They were not paid for many weeks of work, leaving them without money for food and other necessities. In response to Plaintiffs' complaints that they were not being paid and their concerns that their employers were requiring them to violate the terms of their visas, Defendants' recruiting agent continued to make false promises to Plaintiffs regarding their pay and visas, while threatening the workers if they refused to continue working.  When Plaintiffs stood up to their traffickers, complaining to Four Star and its recruiting agent about their exploitation, the agent delivered them to immigration authorities to have them deported and to avoid paying Plaintiffs for their labor.

4.   Plaintiffs bring this action against Defendants individually and on behalf of all workers similarly situated who elect to opt-in to this action under the collective action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for unpaid minimum wages and liquidated damages.  They also sue under the forced labor and trafficking provisions of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589, *et seq.*, for compensatory and punitive damages, under the Migrant and Seasonal Agricultural Worker

Protection Act ("AWPA"), 29 U.S.C. § 1801, *et seq.*, for actual and statutory damages, and

under Michigan law for violation of state wage law, breach of contract and unjust enrichment.

## JURISDICTION AND VENUE

5.   The Court has subject matter jurisdiction under FLSA, 29 U.S.C. § 216(b), AWPA, 29

U.S.C. § 1854, and the TVPRA, 18 U.S.C. § 1595(a), and federal question jurisdiction under 28

U.S.C. § 1331.

6.   The Court has jurisdiction over supplemental state law claims under 28 U.S.C. § 1367 as

they arise from the same case and controversy.

7.   Venue is proper in this Court under 28 U.S.C. § 1391(b) as this is the judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, specifically,

in Monroe County, Michigan.

## PARTIES

### Named Plaintiffs

8.   Plaintiffs are indigent migrant workers from Mexico who were recruited from their home

communities in Mexico by Defendants' recruiting agent, ostensibly to work on H-2A temporary

agricultural visas.

9.   Plaintiffs are from rural, impoverished areas of Mexico where there are few opportunities

for paid employment, and no opportunities that pay wages comparable to those promised under

the H-2A program.  Plaintiffs traveled to the United States at considerable personal expense to

support their families.

10. From May to September 2017, Plaintiffs Reyes-Trujillo, Santiago-Hernandez, Martinez-

Barragan, Bruno-Cruz, and Mateo-Velazquez (the "2017 Plaintiffs") were brought by

Defendants' recruiting agent to work in the U.S. in various states, several months before beginning their work at Four Star in Michigan.

11. In February 2018, Plaintiff Ponciano-Serna was brought by Defendants' recruiting agent directly to work at Four Star in Michigan.

12. All named Plaintiffs were employed by Defendants in Michigan for varying time periods between December 2017 to June 2018.

13. Plaintiff Eduardo Reyes-Trujillo is an individual from the state of Puebla, Mexico. He was employed by the Defendants from January 2018 to March 2018.

14. Plaintiff Gerardo Santiago-Hernandez is an individual residing in the state of Hidalgo, Mexico. He was employed by the Defendants from January 2018 to March 2018.

15. Plaintiff Miguel Angel Martinez-Barragan is an individual from the state of Oaxaca, Mexico. He was employed by the Defendants from December 2017 to March 2018.

16. Plaintiff Santos Bruno-Cruz is an individual residing in the state of Hidalgo, Mexico. He was employed by the Defendants from January 2018 to March 2018.

17. Plaintiff Pablo Mateo-Velazquez is an individual residing in the state of Hidalgo, Mexico. He was employed by the Defendants from January 2018 to March 2018.

18. Plaintiff Andres Ponciano-Serna is an individual residing in the state of Hidalgo, Mexico. He was employed by the Defendants from February 2018 to June 2018.

19. During each of the relevant time periods, Plaintiffs were employees of Four Star and of Thomas Smith as defined in 29 U.S.C. § 203(e) of the FLSA.

20. At all relevant times, Plaintiffs were engaged in commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203 of the FLSA.

-4-

21. Plaintiffs have consented in writing to be Plaintiffs in this action and have or will shortly execute a Consent to Join form. Plaintiffs Eduardo Reyes-Trujillo, Miguel A. Martinez-Barragan, Pablo Mateo-Velazquez, and Andres Ponciano-Serna's Consent to Join forms are attached in Exhibit A.

### Defendant Four Star

22. Four Star Greenhouse, Inc. is a Michigan domestic corporation with a registered principal place of business located at 1015 Indian Trails Rd., Carleton, MI 48117.

23. Four Star sells young plants and finished crops throughout the United States to wholesale growers, retail growers, garden retailers and professional landscapers.

24. Four Star is the number one supplier of Proven Winners, a brand described on Four Star's website as a "breakthrough brand" in the horticultural industry.

25. Four Star employs over 100 employees yearly and generates over $18 million in annual sales.

26. Four Star is and at all relevant times was an enterprise under FLSA, 29 U.S.C. § 203(r), because it operates and has operated for a business purpose, specifically, cultivating and selling plants for sale.

27. Four Star is and at all relevant times was an enterprise engaged in commerce or in the production of goods for commerce under FLSA, 29 U.S.C. § 203(s)(1)(A). Specifically, at all relevant times, Four Star's employees regularly and recurrently handled or otherwise worked on goods moved in or produced for commerce, including but not limited to plants sold to other growers and the public; and Four Star's annual gross volume of sales made or business done was not less than $500,000.

28. During each of the relevant time periods, Four Star was an employer of Plaintiffs under FLSA, 29 U.S.C. § 203 and AWPA, 29 U.S.C. §§ 1802 (2) and (5).

**Defendant Thomas Smith**

29. Thomas Smith, an individual, is the owner, President, Treasurer, Resident Agent, and a Director of Four Star.

30. Smith founded Four Star in 1982 and maintains operational control of the Four Star enterprise.

31. Smith signed a contract as the President and duly authorized representative of Four Star, and as the recipient of services from farm labor contractor VCH.

32. Defendants' contract with VCH provided for VCH to recruit and hire workers, including Plaintiffs, to work at Four Star's nursery and greenhouse operations in Michigan.

33. Defendants' contract with VCH required VCH to instruct workers to comply with all of Four Star's policies and procedures.

34. During their employment at Four Star, Plaintiffs were instructed to follow Four Star's policies and procedures.

35. Defendants' contract with VCH specified Four Star would pay VCH an hourly rate based on workers' hours and based on the rate of pay provided to those workers.

36. Four Star paid VCH based on a calculation of the number of hours worked by workers recruited by VCH, including Plaintiffs.

37. Plaintiffs worked at Four Star under Four Star's electronic timekeeping and labor tracking system which involved tracking the type of tasks and plants they were handling throughout the workday.

38. Smith developed Four Star's electronic labor tracking software which tracks labor costs along with plant type.

39. Accordingly, Smith is individually liable as an employer under FLSA, 29 U.S.C. § 203(d), AWPA, 29 U.S.C. 1802(2), and Michigan state wage law, MCL § 408.471(d), for Defendants' FLSA, AWPA and Michigan wage law violations.

### Defendants Employed Plaintiffs Under the FLSA and AWPA

40. As detailed above, Defendants determined and controlled the terms and conditions of Plaintiffs' employment, including their pay rates, hours, manner of performance, and timekeeping among other essential functions of an employer.

41. Accordingly, at all relevant times, while Plaintiffs were working at Four Star facilities, Defendants were employers that employed Plaintiffs under 29 U.S.C. §§ 203(d) and (g) of the FLSA.

42. At all times relevant to this action, Defendants were agricultural employers under AWPA, 29 U.S.C. § 1802(2), in that they owned or operated a packing shed or nursery and hired and employed the 2017 Plaintiffs and others as migrant agricultural workers.

43. At all times relevant to this action, the 2017 Plaintiffs were employed in agricultural employment under AWPA, 29 U.S.C. 1802(3), in that they were employed in the cultivation, growing, or harvesting of horticultural commodities and/or in work incident to or in conjunction with Defendants' growing operations, including preparation for market or delivery to storage or to carriers for transportation to market for Defendants' horticultural products.

44. The 2017 Plaintiffs were migrant agricultural workers under AWPA, 29 U.S.C. § 1802(8)(A), while they were employed by Defendants because they were employed in

agricultural employment of a seasonal or other temporary nature and were required to be absent overnight from their permanent places of residences in Mexico.

45. Because "employ" has the same meaning under AWPA, 29 U.S.C. § 1802(5), as under FLSA, Defendants also employed the 2017 Plaintiffs under AWPA.

### FACTUAL ALLEGATIONS

#### Defendants' Use of Farm Labor Contractors and the H-2A Program

46. The H-2A temporary agricultural program allows U.S. employers or U.S. agents to bring workers from outside the U.S., (hereinafter "H-2A workers"), to work in temporary jobs in agriculture when insufficient domestic workers are available to do the work.

47. Workers brought to the United States under the H-2A program are issued a visa tied to specific employers and corresponding worksites.

48. Foreign nationals cannot apply for an H-2A visa on their own. They must be recruited and solicited by an employer or a labor contractor who is authorized by the U.S. Department of Labor (USDOL) to recruit agricultural workers.

49. H-2A workers are brought under a job order, which sets the terms and conditions of their employment, including H-2A program requirements such as reimbursement for inbound and outbound transportation costs to and from a worker's hometown, providing licensed migrant labor housing, the period of employment, and the hourly pay rate—at minimum, the state-specific Adverse Effect Wage Rate.

50. In 2017, Defendants selected VCH, a farm labor contractor with its principal place of business in Lake Placid, Florida, to operate as its recruiting agent to select and transport workers to work in its operations in Monroe County, Michigan.

51. Under the H-2A program, Defendants had the option to apply for permission to recruit and hire those workers directly but decided not to do so.

52. To this day, Defendants continue to use farm labor contractors to hire and transport workers from Mexico to their Michigan worksite.

53. In March of 2016, well before Defendants selected VCH to serve as their recruiting agent, public records show that VCH was fined nearly $22,000 by the U.S. Department of Transportation, for a fatal bus crash that took place while VCH was transporting workers from Monroe, Michigan back to Mexico. Six H-2A workers were killed in the crash.

54. On August 31, 2017, public records show that VCH was disciplined and issued a civil monetary penalty by Florida's Department of Business and Professional Regulation.

55. VCH did not register as a foreign corporation with Michigan's Department of Licensing and Regulatory Affairs ("LARA").

56. On May 8, 2018, the U.S. Department of Labor's Wage and Hour Division debarred VCH and its owner, Juan Vasquez, from the H-2A program for three years due to VCH's violations of the H-2A regulations in North Carolina, including failure to reimburse its H-2A workers for their inbound travel expenses and failure to provide adequate payroll or time records.

57. In November 2017, Four Star selected and contracted with VCH, despite publicly available information showing that VCH had engaged in a pattern of labor violations, including the 2016 fatal bus crash, and that VCH was not registered to do business in Michigan.

58. In Four Star's November 2017 contract with VCH (the "2017 Contract"), Four Star claimed that it was not a joint employer with VCH.

59. Through this provision Four Star sought to evade responsibility for the workers VCH would recruit and transport to work at Four Star's Michigan worksite.

60. The 2017 Contract references several requirements specific to the H-2A Program, including inbound and outbound transportation, approved housing, and that the hourly rate would be adjusted subject to any change to the Adverse Effect Wage Rate.

61. On December 11, 2017, USDOL issued H-2A Job Order No. 8349344, authorizing VCH to bring 145 workers to 1015 Indian Trail Road, Carleton, MI 48117, 1099 E. Siglar [sic] Rd., Carleton, MI 48117, and 9478 N. Stoney Creek Rd., Carleton, MI 48117, all addresses that correspond to Four Star, (hereinafter "2018 Four Star Job Order").

62. The 2018 Four Star Job Order further states that the workers would work "in a commercial nursery," be paid $12.75 per hour, for an anticipated thirty-six (36) hours of work per week, for the anticipated period of employment of January 8, 2018 to July 30, 2018.

63. Defendants knew or should have known that their recruiting agent VCH had obtained the 2018 Four Star Job Order.

64. Defendants knew or should have known that their recruiting agent VCH was recruiting individuals from Mexico through the H-2A program to work at Four Star.

65. Defendants knew or should have known that their recruiting agent VCH was required to reimburse workers for inbound and outbound travel and visa costs and pay wages exceeding the federal minimum wage.

### Recruitment of Plaintiffs in Mexico

66. At various times from May 2017 until February 2018, VCH, acting as an agent of the Defendants, recruited and transported Plaintiffs from their homes in Mexico, with promises of well-paying work in the United States as H-2A workers.

67. Based on the recruitment promises by Defendants' recruiting agent, VCH, Plaintiffs traveled hundreds of miles to apply for their visas in Monterrey, Mexico.

-10-

68. Plaintiffs assumed personal loans with high interest rates to pay out of pocket for travel to Monterrey, for their H-2A visa fees, and for related subsistence costs.

69. Plaintiffs were issued valid H-2A visas to work under various job orders obtained by VCH.

70. Pursuant to the terms and regulations of the H-2A program, each Plaintiff was required to work within the terms of their particular job order, visa, and authorized stay.

### Forced Labor and Coercion of the 2017 Plaintiffs

71. From May to September 2017, Defendants' recruiting agent brought the 2017 Plaintiffs to work in the U.S., several months before beginning their work at Four Star.

72. During this time period, the 2017 Plaintiffs were repeatedly moved between different states or worksites outside the terms of their contracts, and had little to no notice from Defendants' recruiting agent regarding where they would be taken next or how long they would be required to work.

73. During this period, Defendants' recruiting agent frequently paid the 2017 Plaintiffs with checks that bounced or failed to issue these plaintiffs any form of pay.

74. Defendants' recruiting agent left Plaintiff Santiago-Hernandez and several other workers stranded for a full month without work, pay, transportation, or food, refusing to answer their calls.

75. Prior to being brought to Michigan to work for Defendants, the 2017 Plaintiffs had not been paid for weeks of work and Defendants' recruiting agent said they would only be paid if they worked in Michigan.

-11-

76. The 2017 Plaintiffs were in debt with growing interest on their loans because they should have been reimbursed for visa and travel costs within their first week of work in the U.S. but were never reimbursed.

77. Defendants' recruiting agent threatened to blacklist the 2017 Plaintiffs from the H-2A program if they did not work in Michigan.

78. Defendants' recruiting agent repeatedly made false promises to the 2017 Plaintiffs that their visas were being renewed, and that Plaintiffs would have no issues with immigration, but by the time the 2017 Plaintiffs arrived in Michigan to work at Four Star, their visas were expired.

79. By the time Defendants' recruiting agent brought the 2017 Plaintiffs to Four Star, in December 2017 and January 2018, the 2017 Plaintiffs were so desperate for money for basic necessities, including food, with no means of returning home to Mexico, that they had little choice but to work at Four Star.

### Plaintiffs' 2018 Employment by Defendants

80. In early 2018, Defendants' recruiting agent brought additional H-2A workers from Mexico to work at Four Star under the 2018 Four Star Job Order.

81. Plaintiff Ponciano-Serna was recruited under the 2018 Four Star Job Order and like 2017 Plaintiffs, began his employment with Four Star in debt for his visa and travel costs, with growing interest on his loan.

82. By February 2018, all six named Plaintiffs were working at Four Star's Michigan worksite and living at migrant housing units located at Chestnut Hills Apartments, in Monroe, Michigan.

83. Neither the Defendants nor Defendants' recruiting agent provided Plaintiffs with a copy of their work contract or any other written terms and conditions of employment for their work at Four Star before Plaintiffs came to work at Four Star in Michigan.

84. 2017 Plaintiffs never received a copy of their work contract or any other written terms and conditions of employment related to their work at Four Star.

85. Defendants employed Plaintiffs to work in Four Star's nursery operation, holding and exercising the power to control, direct and supervise Plaintiffs and the work they performed, and regularly exercised said power during the relevant time periods.

86. During the period Plaintiffs worked at Four Star, all their work was conducted at Four Star owned and operated facilities.

87. Plaintiffs worked in Four Star's shipping department.

88. Plaintiffs' duties at Four Star consisted primarily of choosing and transporting plants from the greenhouse to the shipping department, where they ticketed plants with shipping code labels and packed them for shipping around the country. Other duties involved building boxes, sweeping, and trimming plants.

89. Defendants provided Plaintiffs with all their tools and equipment, including gloves and tools to move and transport the plants.

90. Defendants' employees directly supervised every aspect of Plaintiffs' work, including: training Plaintiffs on their job duties and requirements; assigning and supervising tasks throughout the day; each day, reviewing and correcting any errors throughout the day; and generally maintaining a constant physical presence throughout every shift.

91. Defendants set the Plaintiffs' daily work schedules, controlled Plaintiffs' daily starting and stopping times, and work assignments.

92. Defendants often required Plaintiffs to work over sixty hours per week.

93. Defendants provided Plaintiffs with Four Star employee identification numbers.

94. Defendants required Plaintiffs to comply with their timekeeping policies. Plaintiffs' time was tracked through an electronic timekeeping system owned and operated by Four Star and developed by Defendant Smith.

95. Defendants provided Plaintiffs with electronic key cards and the designated codes that corresponded to their different tasks and required Plaintiffs to scan their key cards each time they changed tasks.

96. Defendants had the authority, and exercised the authority, to direct their recruiting agent VCH to select particular workers, including Plaintiffs, to remain employed at Four Star.

97. Defendants controlled Plaintiffs' wages by paying a fixed hourly rate per worker to their recruiting agent VCH for the Plaintiffs' labor.

98. Defendants' 2017 Contract with their recruiting agent VCH provided that the hourly rate paid to VCH would be adjusted according to any changes to the workers' wage rate.

99. Plaintiffs were supposed to be paid $12.75 per hour, on a weekly basis, but were not paid on time, not paid consistently, and were not paid at all for hundreds of hours of work at Four Star.

100.    Plaintiffs were paid with checks that bounced repeatedly, to the point that the store where Plaintiffs would cash their checks began refusing to cash their checks.

101.    Plaintiffs rarely received paystubs while working for Defendants.

102.    Plaintiff Ponciano-Serna was not reimbursed for his visa fee or travel costs, including subsistence expenses, as required under the H-2A program, bringing his first week's

wages below minimum wage. He was also not reimbursed his full outbound expenses to return home to Mexico.

103.    Defendants' recruiting agent knew that the 2017 Plaintiffs' visas were expired while they were working at Four Star but continued to assure them that their visas had been extended.

104.    Defendants knew or should have known that at least some employees brought by Defendants' recruiting agent had been brought outside the terms of the 2018 Four Star Job Order and had expired visas.

105.    Defendants knew or should have known that Plaintiffs were not being paid properly or at all for multiple pay periods.

106.    Defendants knew or should have known that to avoid paying workers, Defendants' recruiting agent would send workers back to Mexico or engage in other retaliatory actions to avoid paying Plaintiffs.

107.    Despite having knowledge that their employees were desperately underpaid and without money for basic necessities, Defendants continued to employ Plaintiffs, knowingly accepting the benefit of Plaintiffs' labor without paying them.

### The 2017 Plaintiffs Suffer Retaliation for Complaining about Unpaid Wages

108.    While working at Four Star, the 2017 Plaintiffs repeatedly complained to Defendants and Defendants' recruiting agent that they had not been paid.

109.    Instead of paying Plaintiffs for their unpaid wages, Defendants allowed their recruiting agent, VCH, to dispose of the 2017 Plaintiffs through unlawful means.

110.     On March 21, 2018, Defendants' recruiting agent, VCH, orchestrated the arrest and detention of the 2017 Plaintiffs by federal immigration agents in retaliation for the 2017 Plaintiffs' complaints of unpaid wages.

111.     After he started having pay issues at Four Star, Plaintiff Mateo-Velazquez was told by Defendants' recruiting agent that they knew someone was complaining to Four Star.

112.      Defendants' recruiting agent then threatened Plaintiff Mateo-Velazquez that if they found out that he complained to Four Star about not being paid, he would be sent back to Mexico and blacklisted from the H-2A program.

113.     Plaintiff Santiago-Hernandez complained to two of his Four Star supervisors about his unpaid wages, approximately one week before Defendants' recruiting agent turned him over to immigration authorities.

114.     Plaintiffs Reyes-Trujillo, Martinez-Barragan and Bruno-Cruz also complained directly to Defendants' recruiting agent about their unpaid wages.

115.     Shortly after the 2017 Plaintiffs complained to Four Star and its recruiting agent about unpaid wages, and after approximately four consecutive weeks of work with no pay, the recruiting agent delivered the 2017 Plaintiffs to immigration agents in direct retaliation for the Plaintiffs' complaints about their unpaid wages.

116.     On the morning of Wednesday, March 21, 2018, Defendants' recruiting agent lured the 2017 Plaintiffs out of the Chestnut Hills Apartments with the false claim that they were taking them shopping at Walmart while inspectors came to their apartments, and assured them that they had nothing to worry about.

117.     Defendants' recruiting agent, through Francisco Vasquez, instructed Plaintiffs Reyes-Trujillo, Santiago-Hernandez, Martinez-Barragan, and Mateo-Velazquez to clean up, pack their personal belongings away, and board the recruiting agent's bus to go to Walmart.

118.     Francisco Vasquez drove Plaintiffs Reyes-Trujillo, Santiago-Hernandez, Martinez-Barragan, and Mateo-Velazquez to Walmart. When they arrived, immigration agents were waiting and arrested Plaintiffs as they walked off the bus into the parking lot.

119.     Francisco Vasquez also called a few other workers, including Plaintiff Bruno-Cruz, who were out at another store, telling them the same fabricated story about the inspectors and to meet him at Walmart instead of going home.

120.     Francisco Vasquez waited while Plaintiffs were detained in the parking lot until Plaintiff Bruno-Cruz and his coworkers arrived. Francisco Vasquez waived Plaintiff Bruno-Cruz and his coworkers to come over, and before they realized what was happening, Plaintiff Bruno-Cruz and his coworkers were also arrested by federal immigration agents.

121.     Francisco Vasquez drove off in the bus, leaving the 2017 Plaintiffs and the other workers to be carted off by immigration agents, jailed, and placed in deportation proceedings.

122.     When these Plaintiffs were detained, nearly all their personal belongings— including their clothing and personal documents such as passports, visas, and birth certificates— were left at the Chestnut Hills Apartments. Defendants' recruiting agent never returned their belongings, and Plaintiffs never recovered most of these items and have not been able to afford to replace them.

123.     For over a month, Plaintiffs were detained in federal immigration custody in the Calhoun County Correctional Center in Michigan until they were forced to depart from the United States.

124.     The 2017 Plaintiffs incurred substantial expenses in return travel to their homes in Mexico, for which they were never reimbursed.

125.     The 2017 Plaintiffs have since been unable to get hired for jobs in the H-2A Program, either because they have been blacklisted, because they still have not recovered their travel documents and cannot afford new ones, or both.

### Collective Action Facts

126.     For purposes of the FLSA, Plaintiffs bring this action on behalf of themselves and similarly situated current and former employees of Four Star who elect to opt-in to this action under the collective action provision of FLSA, 29 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by Four Star that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

127.     In particular, Plaintiffs bring this suit on behalf of the following similarly situated persons:

> All non-supervisory workers who were recruited by VCH and who worked on the premises of Four Star operations between December 2017 and July 2018 and who elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b).

128.     For purposes of the FLSA, Plaintiffs and those similarly situated were or are non-exempt employees.

129.     Plaintiffs and those similarly situated did not exercise discretion in their job duties; did not provide administrative support to the company; and did not have managerial responsibilities.

130.     During the relevant time frame, Plaintiffs and those similarly situated regularly suffered serious violations of the rights under the FLSA in that they were not paid for many

hours of labor and sometimes not paid at all, reducing their wages below minimum wage.

131. During the relevant time frame, Plaintiffs and those similarly situated regularly suffered serious violations of the rights under the FLSA because they were not reimbursed their inbound and/or outbound travel expenses incurred for the benefit of the employer, reducing their wages below the minimum wage.

132. At all relevant times, Defendants knew or should have known that these practices were illegal, and that the FLSA prohibited it from failing to pay workers the required federal minimum wage for each hour worked.

133. At all relevant times, Defendants' actions were willful under FLSA in that they knew or acted with reckless disregard that their actions were prohibited under FLSA.

134. The net effect of Four Star's unlawful policy and practice is that it enjoyed ill-gained profits at the expense of Plaintiffs and those similarly situated.

## CLAIMS FOR RELIEF
### COUNT I
### UNPAID MINIMUM WAGES IN VIOLATION OF THE FLSA
*On behalf of all Named Plaintiffs and the Putative Opt-ins against all Defendants*

135. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

136. The FLSA requires employers to pay employees who engage in the production of goods for interstate commerce, or who are employed by an enterprise engaged in commerce or in the production of goods for commerce, the federal minimum wage. 29 U.S.C. §§ 206(a), 215(a)(2).

137. Plaintiffs were engaged in the production of goods for commerce throughout their employment with Four Star.

138.     Four Star is and was at all relevant times an enterprise engaged in commerce and the production of goods for commerce.

139.     Defendants repeatedly violated 29 U.S.C. §§ 206(a) and 215(a)(2) by failing to pay Plaintiffs and those similarly situated the applicable federal minimum wage during their employment at Four Star, during 2017 and 2018.

140.     Defendants violated the FLSA, as set forth herein, in part by failing to pay named Plaintiffs and those similarly situated the federal minimum wage for each hour that Plaintiffs worked. Instead, Plaintiffs and those similarly situated were frequently paid with checks that bounced or were not paid at all.

141.     Defendants violated the FLSA, as set forth herein, in part by failing to reimburse Plaintiff Ponciano-Serna and those similarly situated, for inbound transportation and visa costs. These costs, which were incurred primarily for the benefit of Defendants, resulted in FLSA minimum wage violations when Defendants failed to reimburse Plaintiff Ponciano-Serna and those similarly situated in their first pay period.

142.     Defendants violated the FLSA, as set forth herein, in part by failing to reimburse Plaintiffs and others similarly situated for their outbound transportation and visa costs. These costs, which were incurred primarily for the benefit of Defendants, resulted in FLSA minimum wage violations.

143.     Defendants' repeated failures to pay Plaintiffs and those similarly situated the federal minimum wage were willful violations of the FLSA under 29 U.S.C. § 255(a).

144.     As a consequence of Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their unpaid minimum wages, plus an additional equal amount in liquidated damages, under 29 U.S.C. § 216(b).

## COUNT II
### VIOLATIONS OF THE FLSA ANTI-RETALIATION PROVISIONS
*On behalf of the 2017 Plaintiffs against all Defendants*

145.      Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

146.      The FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . ." 29 U.S.C. § 215(a)(3). The term "filed any complaint" encompasses internal oral and written complaints.

147.      By filing multiple oral complaints about minimum wage violations to Four Star and Defendants' recruiting agent—complaining about receiving paychecks that bounced or about receiving no wages at all—the 2017 Plaintiffs engaged in protected activity under the FLSA.

148.      Because the 2017 Plaintiffs repeatedly complained directly to Defendants and to their recruiting agent about minimum wage violations, Defendants were well aware of their protected activity under the FLSA.

149.      The 2017 Plaintiffs suffered materially adverse employment actions when Defendants' recruiting agent and Plaintiffs' joint employer VCH, delivered them to immigration officers and terminated the workers' employment relationship. These actions placed Plaintiffs in deportation proceedings and in federal custody for over a month, until they were forced to depart from the United States, incurring substantial expenses for their return travel to Mexico.

150.      As joint employers of the plaintiffs, Defendants are liable for all violations of the Fair Labor Standards Act by their co-employer and recruiting agent, VCH.

151.      Defendants are also liable for retaliation against the 2017 Plaintiffs because VCH was acting at all relevant times as Defendants' agent, within the scope of that agency.

-21-

152.     Additionally, Defendants knew or should have known about VCH's retaliatory conduct.

153.     VCH's animus towards protected conduct, as well as the temporal proximity between the 2017 Plaintiffs' complaints and their terminations, establishes a causal link between the protected activity and the adverse action.

154.     The wrongful termination, placement into deportation proceedings, time spent in federal custody, and in some cases, removal at their own expense suffered by the 2017 Plaintiffs caused them significant monetary damages and significant damages for emotional distress, pain and suffering.

155.     The 2017 Plaintiffs are therefore entitled to recover actual, liquidated and punitive damages under 29 U.S.C. §§ 215(a)(3) and 216(b).

## COUNT III
### VIOLATIONS OF THE AWPA
*On Behalf of the 2017 Plaintiffs against all Defendants*

156.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

157.     AWPA provides several protections for migrant and seasonal farmworkers to improve the conditions of their employment. 29 U.S.C. § 1801 *et seq.*

158.     On the date that their H-2A visas expired and thereafter, the 2017 Plaintiffs were migrant agricultural workers as defined under AWPA.  29 U.S.C. 2 § 1802(8).

159.     During the relevant time periods, Defendants employed the 2017 Plaintiffs under AWPA, 29 U.S.C. § 1802(2).

160.     Defendants failed to provide the 2017 Plaintiffs with written disclosures regarding the terms and conditions of their employment at Four Star at the time they were recruited. 29 U.S.C. § 1821(a).

161.     During the relevant time periods, Defendants failed to regularly provide the 2017 Plaintiffs with paystubs or any other itemized written statements containing the required information under AWPA. 29 U.S.C. § 1821(d).

162.     Defendants failed to pay the 2017 Plaintiffs their wages owed when due when workers were paid with checks that bounced, when workers were paid weeks late, and when Plaintiffs were not paid at all for multiple weeks of work in February and March of 2018. 29 U.S.C. § 1822(a).

163.     Defendants violated the terms of the working arrangement without justification by failing to pay the 2017 Plaintiffs for wages earned at Four Star between February to March 2018. 29 U.S.C. § 1822(c).

164.     Defendants further violated the 2017 Plaintiffs' working arrangement without justification by failing to comply with state and federal laws applicable to their employment including other provisions of the AWPA, and their right to the minimum wage under the FLSA and the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL § 408.412. 29 U.S.C. § 1822(c).

165.     Defendants violated the terms of the working arrangement without justification by failing to pay Plaintiffs for their costs in returning to their homes in Mexico.

166.     Through their recruiting agent, Defendants knowingly provided false and misleading information to the 2017 Plaintiffs when they failed to disclose the full terms and conditions of their employment at Four Star, promised them their H-2A visas would be extended

-23-

but did not extend said visas, and promised they would be paid their unpaid wages but never did. 29 U.S.C. § 1821(f).

167.     For each violation of the AWPA, Plaintiffs are entitled to recover actual or statutory damages, whichever is higher, under 29 U.S.C. § 1854(c)(1).

**COUNT IV**
**VIOLATIONS OF THE AWPA ANTI-RETALIATION PROVISIONS**
*On behalf of the 2017 Plaintiffs against all Defendants*

168.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

169.     The AWPA makes it unlawful to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any migrant or seasonal agricultural worker because such worker has, with just cause, filed any complaint . . . or because of the exercise, with just cause, by such worker on behalf of himself or others of any right or protection afforded by this chapter." 29 U.S.C. § 1855(a).

170.     By making multiple oral complaints about Four Star and Defendants' recruiting agent's failure to pay their wages when due and violating their working arrangement— specifically complaining about receiving paychecks that bounced or about receiving no wages at all—the 2017 Plaintiffs engaged in protected activity under AWPA.

171.     Because the 2017 Plaintiffs repeatedly complained directly to Defendants and to their recruiting agent about minimum wage violations, Defendants were well aware of their protected activity under the AWPA.

172.     The 2017 Plaintiffs suffered materially adverse employment actions when Defendants' recruiting agent and Plaintiffs' joint employer, VCH, delivered them to immigration officers and terminated the workers' employment relationship. These actions placed the 2017

-24-

Plaintiffs in deportation proceedings and federal custody for approximately two months, until they were forced to depart from the United States, many of them having to pay hundreds of dollars for their return travel to Mexico.

173.    As joint employers of the 2017 Plaintiffs, Defendants are liable for all violations of the AWPA by its co-employer and recruiting agent, VCH.

174.    Defendants are also liable for retaliation against the 2017 Plaintiffs because VCH was acting at all relevant times as Defendants' agent, within the scope of that agency.

175.    Additionally, Defendants knew or should have known about VCH's retaliatory conduct.

176.    VCH's animus towards protected conduct, as well as the temporal proximity between the 2017 Plaintiffs' complaints and their terminations, establishes a causal link between the protected activity and the adverse action.

177.    The wrongful termination, placement into deportation proceedings, time spent in federal custody, and in some cases, removal at their own expense suffered by the 2017 Plaintiffs caused them significant monetary damages and significant damages for emotional distress, pain and suffering.

178.    The 2017 Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

### COUNT V
### VIOLATIONS OF THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008
*On Behalf of the 2017 Plaintiffs against all Defendants*

179.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

180.     The TVPRA allows victims to "bring a civil action against . . . whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a).

### A. Forced Labor under 18 U.S.C. § 1589(b)

181.     Defendants knowingly benefitted from participation in a venture with their recruiting agent, VCH, by accepting the benefit of the 2017 Plaintiffs' labor, in knowing or reckless disregard of the fact that the venture provided or obtained labor from the 2017 Plaintiffs in violation of 18 U.S.C. § 1589(a). *See* 18 U.S.C. § 1589(b).

182.     Defendants knew or should have known that VCH provided or obtained labor from the 2017 Plaintiffs by threatening the 2017 Plaintiffs with blacklisting that would bar future economic opportunities, by refusing to reimburse travel and visa costs that the 2017 Plaintiffs had paid with high-interest loans, and by refusing to pay the 2017 Plaintiffs even subsistence-level wages in a manner that caused serious harm under 18 U.S.C. § 1589(a)(2).

183.     Defendants knew or should have known that VCH provided or obtained labor from the 2017 Plaintiffs by threatening the 2017 Plaintiffs with blacklisting that would bar future immigration opportunities, and by deceiving the 2017 Plaintiffs about the terms of their immigration status in a manner that constituted an abuse of the legal process under 18 U.S.C. § 1589(a)(3).

184.     Defendants knew or should have known that VCH provided or obtained labor from the 2017 Plaintiffs by a scheme, plan, or pattern designed to isolate and exacerbate the 2017 Plaintiffs' existing vulnerabilities, which, in the totality of the circumstances, was intended to

cause and did cause the 2017 Plaintiffs to believe that they would suffer serious harm if they were to leave the employ of Defendants, in violation of 18 U.S.C. § 1589(a)(4).

185.    The 2017 Plaintiffs are therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. § 1595(a).

### B. Trafficking with Respect to Forced Labor under 18 U.S.C. § 1590

186.    Defendants knowingly participated in a venture with their recruiting agent, VCH, to recruit, harbor, transport, provide or obtain the 2017 Plaintiffs for their labor and services in violation of 18 U.S.C. § 1589. *See* 18 U.S.C. § 1590.

187.    The 2017 Plaintiffs are therefore entitled to recover compensatory and punitive damages and attorneys' fees and costs under 18 U.S.C. § 1595(a).

<u>COUNT VI</u>
**VIOLATIONS OF MICHIGAN'S MINIMUM WAGE PROVISION**
*On Behalf of All Named Plaintiffs against all Defendants*

188.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

189.    The Workforce Opportunity Wage Act ("WOWA"), MCL § 408.412, provides that an employer must not pay an employee at a rate less than is prescribed in the Act.

190.    Each Plaintiff was an employee of Defendants during 2018 within the meaning of § 408.412(c) of the WOWA.

191.    Defendants employed each Plaintiff within the meaning of § 408.12(b) of the WOWA.

192.    Beginning on January 1, 2018, the minimum wage rate in Michigan was $9.25 per hour. MCL § 408.414(e).

193.     Defendants failed to pay each Plaintiff at least the minimum wage for every compensable hour he worked for several weeks of work.

194.     The WOWA also provides that employers must provide their employees with a statement of the hours worked and the wages paid. MCL § 408.417.

195.     Defendants failed to consistently provide paystubs to Plaintiffs containing their hours worked and wages paid.

196.     Plaintiffs are entitled to recover their unpaid minimum wages, plus an additional amount in liquidated damages, together with court costs and reasonable attorneys' fees under WOWA, MCL § 408.419(1).

**COUNT VII**
**BREACH OF CONTRACT UNDER MICHIGAN STATE LAW**
*On Behalf of all Named Plaintiffs against Four Star*

197.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

198.     Plaintiffs entered into an employment contract with Four Star to work for Four Star in Michigan during the 2018 season under the H-2A program.

199.     The 2018 Four Star Job Order contains the terms and conditions of the employment contract, the terms of which reflect the Federal regulations at 20 C.F.R. §§ 655.121, 655.122, and 655.135.

200.     Plaintiff Ponciano-Serna was an H-2A worker brought to the United States pursuant to the 2018 Four Star Job Order.

201.     The 2017 Plaintiffs were employed by Four Star in corresponding employment under 29 C.F.R. § §655.103(b), in that they were employed to perform work listed in the relevant job orders and/or performed by H-2A workers.

202.     Defendant Four Star breached the employment contract with Plaintiffs by

    a.  Providing terms and conditions that grossly deviated from the terms and conditions on the 2018 Four Star Job Order;

    b.  Failing to pay Plaintiffs the Adverse Effect Wage Rate salary of $12.75 per hour for every compensable hour that Plaintiffs worked;

    c.  Failing to pay Plaintiffs at least the Federal minimum wage for each compensable hour of work in a work week;

    d.  Failing to pay Plaintiffs at least the Michigan state minimum wage for each compensable hour in a work week;

    e.  Failing to pay Plaintiffs their wages due on a weekly basis;

    f.  Failing to reimburse Plaintiff Ponciano-Serna for his full inbound and outbound travel between his hometown in Mexico and Michigan and failing to reimburse the 2017 Plaintiffs for their outbound travel from Michigan to their homes in Mexico.

    g.  Failing to reimburse Plaintiff Ponciano-Serna for his daily subsistence expenses during his inbound and outbound travel between his hometown in Mexico and his employment in Michigan and failing to reimburse the 2017 Plaintiffs for their daily subsistence expenses during their outbound travel to their homes in Mexico from Michigan.

203.     Plaintiffs are entitled to recover their unpaid wages and reimbursable expenses under Michigan state law.

## COUNT VIII
### UNJUST ENRICHMENT
*On behalf of all Named Plaintiffs against all Defendants*

204.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

205.    Defendants have been unjustly enriched by their practice of failing to pay Plaintiffs for all hours worked and for failing to reimburse Plaintiffs some or all of their inbound and outbound transportation costs.

206.    Plaintiffs conferred a substantial benefit upon Defendants in the form of many hours of arduous labor at Defendants' Monroe County operations under the direction of Defendants' staff.

207.    Defendants accepted the benefits of Plaintiffs' labor under circumstances such that it would be inequitable and Defendants would be unjustly enriched if they are permitted to retain the benefit of such labor without payment to Plaintiffs.

208.    Defendants deliberately sought to take advantage of Plaintiffs as immigrant workers.

209.    By application of this unjust practice, Defendants have been unjustly enriched at the expense of Plaintiffs.

210.    As a result of Defendants' unjust enrichment, Plaintiffs have substantiated damages in an amount to be determined at trial.  Plaintiffs seek restitution of the amounts that Defendants wrongfully obtained by application of their unjust practices.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, seek an order or orders providing the following relief:

(a)    Conditional certification of this collective action, and prompt issuance of notice

pursuant to 29 U.S.C. § 216(b) to all similarly situated workers who were

-30-

recruited by VCH and worked at Four Star operations and did not receive the minimum wage required by the FLSA. Such notice should inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they worked and did not receive adequate minimum wages because of the Defendants' failure to pay for all hours worked and to reimburse both inbound and outbound transportation expenses, and tolling of the statute of limitations;

(b)     A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

(c)     An injunction prohibiting Defendants from engaging in unlawful employment practices in violation of the FLSA;

(d)     An award of wages for all hours Plaintiffs and those similarly situated worked for which they were not compensated, or were compensated at a rate less than the federal minimum wage;

(e)     An award of liquidated damages as a result of Defendants' willful failure to pay for all hours worked at a rate at least at the federal minimum wage;

(f)     An award of compensatory and punitive damages caused by Defendants' violations of the FLSA's protections against retaliation;

(g)     An award of compensatory and punitive damages caused by Defendants' violations of the William Wilberforce Trafficking Victims Protection Reauthorization Act Of 2008;

(h)     An award of compensatory damages, and an equal amount in liquidated damages, for Defendants' violations of the Michigan Minimum Wage Provisions;

(i)     An award of back pay and front pay for Plaintiffs, including all lost wages and

-31-

benefits of employment including interest, in an amount to be determined at the trial of this case;

(j)    Damages for Defendants' breach of contract in an amount to be determined at trial;

(k)    Restitution for the amounts Defendants wrongfully obtained through unjust enrichment;

(l)    Leave to add additional plaintiffs or opt-ins by motion, the filing of written consent forms, or any other method approved by the Court;

(m)    An award of prejudgment and post-judgment interest;

(n)    An award of compensatory damages, in an amount to be determined at trial, for Plaintiffs' emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(o)    An award of punitive damages in an amount to be determined at trial to be sufficient to punish Defendants for their conduct towards Plaintiffs and deter them from similar conduct in the future;

(p)    An award of costs and expenses of this action along with reasonable attorneys' and expert fees, and other costs of litigation; and

(q)    Such other and further relief the Court may deem appropriate.

Respectfully submitted this 25th day of June, 2020.

**MICHIGAN IMMIGRANT RIGHTS CENTER**

*/s/ Anna M. Hill*
Anna M. Hill (P78632)
ahill@michiganimmigrant.org

Diana E. Marin (P81514)
dmarin@michiganimmigrant.org

15 S Washington Street, Suite 201
Ypsilanti, MI 48197
Telephone: (734) 239-6863
Facsimile: (734) 998-9125

**FARMWORKER LEGAL SERVICES**

*/s/ M. Olivia Villegas*
M. Olivia Villegas (P83628)
ovillegas@farmworkerlaw.org

Kara Moberg (P73820)
kmoberg@farmworkerlaw.org

350 E. Michigan Avenue, Suite 310
Kalamazoo, MI 49007
Telephone: (269) 492-7190
Facsimile: (269) 492-7198

**CENTRO DE LOS DERECHOS DEL MIGRANTE, INC.**

*/s/ Benjamin Richard Botts*
Benjamin Richard Botts
California Bar No. 274542
ben@cdmigrante.org

Julie Pittman
New York Bar
julie@cdmigrante.org

10 E. North Avenue, #9
Baltimore, Maryland 21202
Telephone: (855) 234-9699
Facsimile: (443) 817-0806

*Attorneys for Plaintiffs*

# EXHIBIT A

Consent to File Suit Under the Fair Labor Standards Act
for Plaintiffs Eduardo Reyes-Trujillo, Miguel A. Martinez-Barragan,
Pablo Mateo-Velazquez, and Andres Ponciano-Serna

## CONSENT TO FILE SUIT UNDER
## FAIR LABOR STANDARDS ACT

I,     Eduardo Reyes Trujillo                          , herby consent to file suite as Plaintiff

against   Four Star Greenhouse & Thomas Smith      of       Michigan        , under the

Fair Labor Standards Act, 29 U.S.C. §201, et seq.


Dated   01/09/2020
                                                    _____
                                                          Signature


---

## CONSENTIMIENTO PARA DEMANDAR BAJO LA LEY
## DE CONDICIONES JUSTAS EN EL TRABAJO

Yo,   Eduardo Reyes Trujillo                        , doy mi consentimiento para someter una queja

legal como demandante contra  Four Star Greenhouse & Thomas Smith , de

        Michigan                     bajo la ley de Condiciones Justas del Trabajo, 29 U.S.C. §201 et

seq.


Fecha  01 - 09 - 2020              _____
                                           Firma

## CONSENT TO FILE SUIT UNDER
## FAIR LABOR STANDARDS ACT

I, _____Miguel Angel Martinez Barragan_____ , herby consent to file suite as Plaintiff

against ____Four Star Greenhouse & Thomas Smith____ , of ____Michigan____ , under the

Fair Labor Standards Act, 29 U.S.C. §201, et seq.

Dated: ____01/07/2020____

_____
Signature

------------------------------------------------------------------------------------------------------

## CONSENTIMIENTO PARA DEMANDAR BAJO LA LEY
## DE CONDICIONES JUSTAS EN EL TRABAJO

Yo, __Miguel Angel Martinez Barragan__ , doy mi consentimiento para someter una queja

legal como demandante contra Four Star Greenhouse & Thomas Smith, de

____Michigan____ bajo la ley de Condiciones Justas del Trabajo, 29 U.S.C. §201 et

seq.

Fecha ____07/2____

_____
Firma

Pablo Mateo Velazquez

Four Star Greenhouse  and Thomas Smith        Michigan

06/16/2020

Four Star Greenhouse & Thomas Smith

Michigan

06/16/2020

## CONSENT TO FILE SUIT UNDER FAIR LABOR STANDARDS ACT

I, Andres Ponciano Serna, hereby consent to file suit as Plaintiff against Four Star Greenhouse of

Michigan & Thomas Smith under the Fair Labor Standards Act, 29 U.S.C. §201, et seq

Dated    06/22/2020                          Signature

## CONSENTIMIENTO PARA DEMANDA BAJO LA LEY DE CONDICIONES JUSTAS EN EL TRABAJO

Yo, Andres Ponciano Serna, doy mi consentimiento para someter una queja

legal como demandante contra Four Star Greenhouse de Michigan y Thomas Smith bajo la Ley

de Condiciones Justas del Trabajo, 29 U.S.C. §201 et seq

Fecha  22/Junio/2020    Firma